**EASTON PUBLISHING CO. v. FEDERAL
COMMUNICATIONS COMMISSION
et al.**

No. 9829.

United States Court of Appeals
District of Columbia Circuit.

Argued May 29, 1950.

Decided Oct. 23, 1950.

988

Mr. Eliot C. Lovett, Washington, D.C. for petitioner Easton Publishing Company.

Mr. Max Goldman, Assistant General Counsel, Federal Communications Commission, with whom Mr. Benedict P. Cottone, General Counsel, Federal Communications Commission, Mr. Richard A. Solomon, Counsel, Federal Communications Commission, and Miss Mary Jane Morris, Counsel, Federal Communications Commission, were on the answer, for appellee.

Mr. Donald C. Beelar, with whom Mr. Reed T. Rollo, Washington, D. C., was on the petition, for Allentown Broadcasting Corporation.

Messrs. George O. Sutton, William Thomson and John H. Midlen, all of Washington, D.C., entered appearances for intervenor Associated Broadcasters, Inc.

Before STEPHENS, Chief Judge, and WILBUR K. MILLER and PROCTOR, Circuit Judges.

STEPHENS, Chief Judge.

On June 23, 1947, the Federal Communications Commission, hereafter referred to as the Commission, released an order granting the application of Allentown Broadcasting Corporation for a permit to construct a standard broadcast station at Allentown, Pennsylvania, and denying the applications of Easton Publishing Company and Associated Broadcasters, Inc., for permits to construct a standard broadcast station in Easton, Pennsylvania, and denying the application of Steel City Broadcasting Company for a permit to construct a standard broadcast station in Allentown, Pennsylvania. The four applications were for the use of the same facilities and were mutually exclusive. The Commission stated the basis upon which it acted as follows:

Upon consideration of the size of the two cities, the existing facilities of each and the amount of radio service available to each, we conclude that Allentown is in greater need of

another radio station than Easton; that its need for another radio station is greater than Easton's need for extended services from its existing station, WEST; and that the purposes of Section 307 (b) of the Communications Act would be better served by a grant to one of the Allentown applicants than by a grant to either of the Easton applicants.[1]

On April 13, 1948, the Easton Publishing Company appealed to this court from the Commission's order, and the Allentown Broadcasting Corporation and Associated Broadcasters, Inc., were later permitted to intervene. Steel City Broadcasting Company did not petition for intervention. On May 4, 1949, this court remanded the case to the Commission "for findings upon the comparative needs of the two communities for new radio service and the relative abilities of the applicants to serve the greater need." Easton Publishing Co. v. Federal Communications Com'n (Allentown Broadcasting Corporation et al., Intervenors), 85 U.S. App.D.C. 33, 175 F.2d 344 (1949). In its opinion this court said:

. . . We cannot tell from the findings what caused the Commission to say that Allentown's need was greater. Present and proposed programs would seem to be an essential element in testing comparative community needs from the standpoints of both the receivers and the broadcasters. Appellant urges the point as a factor of weight which was proved in this case. The record contained evidence upon the programs. The Commission made findings as to the composition and character of the program proposals of the two applicants. But it gave no indication of their comparative qualities, or of the lack of any particular type of service in either community, or of the greater ability of either applicant to meet that need.

It may be that the Commission measured the comparative need by the comparative size of the communities. But difference in size does not necessarily spell a difference in need. It is not the court's function to fashion from the evidence the established facts, and from the facts the conclusion. The court looks at the conclusion found by the Commission merely to see that it falls within the perimeter of reason drawn by the findings; and at the findings to see that they have support of substance in the evidence. In the case before us, we cannot tell why the Commission conclud-

1. Section 307 (b) of the Communications Act (Act of June 19, 1934, c. 652, 48 Stat. 1083, as amended June 5, 1936, c. 511, § 2, 49 Stat. 1475, 47 U.S.C.A. § 307 (b) ) provides as follows:

In considering applications for licenses, and modifications and renewals thereof, when and insofar as there is demand

for the same, the Commission shall make such distribution of licenses, frequencies, hours of operation, and of power among the several States and communities as to provide a fair, efficient, and equitable distribution of radio service to each of the same.

ed that Allentown had greater need for a new station than did Easton; or, if Allentown's need was greater, why it concluded that the intervenor would supply that need to a greater extent than would the appellant. Therefore, we cannot tell whether the conclusion of greater need by Allentown and the award to intervenor were or were not arbitrary. The case must therefore be remanded for findings upon this phase. [85 U.S.App.D.C. at pp. 37–38, 175 F.2d at pp. 348–349.]

On February 20, 1950, the Commission released a memorandum opinion and order setting aside its order of June 23, 1947, and designating the applications for further hearing. The Commission referred to a stipulation which had been filed before it on June 24, 1949, by Easton Publishing Company, Allentown Broadcasting Corporation, and Associated Broadcasters, Inc., from which, according to the Commission's characterization of the stipulation, it appeared that since the Commission's order of June 23, 1947, substantial changes in the corporate structure of both the Easton Publishing Company and the Allentown Broadcasting Corporation had occurred. The Commission concluded that it could not determine whether the public interest, convenience or necessity would be served by a grant of the application of either the Easton Publishing Company or the Allentown Broadcasting Corporation without

further proceedings; that the stipulation did not give the Commission information upon which it could conclude that either of those applicants was legally qualified to become a licensee in view of the substantial changes in stock ownership; and that the Commission, because of such changes, had no assurance that the policies proposed by either of those applicants would in fact be the policies of such applicants as presently constituted. The Commission concluded also that the record did not contain information sufficient to enable it to determine on a comparative basis the relative need in Allentown and Easton for additional broadcast service, the program service presently being rendered to the areas and populations proposed to be served by each of the applicants, or the ability of any of the applicants as presently constituted to meet such needs. Accordingly the Commission set aside its order of June 23, 1947, authorized the applicants to file within twenty days such petitions as might be appropriate to seek amendment to bring their applications up to date, reopened the record, and designated the applications for further hearing upon specified issues. Those issues are set forth in the margin.[2]

2. 1. To determine the technical, legal, financial and other qualifications of the applicants, their officers, directors and stockholders, to construct and operate the stations proposed by them, except the legal qualifications of Associated Broadcasters, Inc.

2. To determine the areas and populations which would gain or lose primary service through the operation of those proposed stations and the character of other broadcast services available to those areas and populations.

3. To determine the type and character of program service now being rendered to the areas and populations to be served and the type and character of program service proposed to be rendered by the applicants and whether such proposed service would meet the requirements of the populations and areas proposed to be served.

4. To determine on a comparative basis which of the two communities has the greatest need for the radio service which would become available by the assign-

ment of the frequency involved in this proceeding.

5. To determine on a comparative basis the relative ability of Allentown Broadcasting Corporation on the one hand, or Easton Publishing Company or Associated Broadcasters, Inc. (WEST), on the other, to meet the greater need so determined.

6. To determine whether the operations of the proposed stations would involve objectionable interference with existing or pertinent proposed broadcast stations and, if so, the nature and extent thereof, the areas and populations affected thereby, and the availability of other broadcast service to such areas and populations.

7. To determine whether the installations and operations of the proposed stations would be in compliance with the Commission's Rules and Standards of Good Engineering Practice Concerning Standard Broadcast Stations.

8. To determine on a comparative basis which, if any, of the applications in this proceeding should be granted.

Thereupon the Easton Publishing Company and the Allentown Broadcasting Corporation filed motions for leave to file their present petitions in this court. The motions for leave to file were granted and an oral argument was ordered and had upon the petitions. The writs are sought to prevent the Commission from reopening the case and holding a further hearing and to require it to make findings upon the original record as it stood at the time of the remand except as brought up to date by the stipulation of the parties filed with the Commission as above set forth.

■ We think the petitions for writs of mandamus and prohibition must be denied in view of Federal Communications Commission v. Pottsville Broadcasting Company, 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940), and Fly v. Heitmeyer, 309 U.S. 146, 60 S.Ct. 443, 84 L.Ed. 664 (1940). In the Pottsville case, the Commission, upon the ground, *inter alia*, that the Pottsville Company was not financially qualified, had denied its application for a permit to construct a radio broadcast station in Pottsville, Pennsylvania. Upon an appeal this court reversed the Commission, holding that its conclusion that the Pottsville Company lacked financial qualifications was based upon an erroneous view of Pennsylvania law, and ordered the cause remanded to the Commission for reconsideration in accordance with the court's opinion. After this remand, the Pottsville Company petitioned the Commission to grant its original application. Instead of so doing the Commission ordered a consolidated hearing of the Pottsville application with two subsequently filed rival applications for permits to broadcast upon the same facilities, to consider them "individually on a comparative basis, the application which in the judgment of the Commission will best serve public interest to be granted." The Pottsville Company then obtained from this court a writ of mandamus commanding the Commission to set aside the order for a consolidated hearing and to hear and reconsider the Pottsville Company's application upon the basis of the record as originally made. The Supreme Court reversed the action of this court in issuing the writ of mandamus. It held that the

Commission was not limited upon reconsideration, following a reversal on appeal, to the record before it as of the time of the court's remand. The Court stated:

On review the court may thus correct errors of law and on remand the Commission is bound to act upon the correction. Federal Power Comm'n v. Pacific Co., 307 U.S. 156, 59 S.Ct. 766, 83 L.Ed. 1180. But an administrative determination in which is imbedded a legal question open to judicial review does not impliedly foreclose the administrative agency, after its error has been corrected, from enforcing the legislative policy committed to its charge. Cf. Ford Motor Co. v. Labor Board, 305 U.S. 364, 59 S.Ct. 301, 83 L.Ed. 221.

The Commission's responsibility at all times is to measure applications by the standard of "public convenience, interest, or necessity." The Commission originally found respondent's application inconsistent with the public interest because of an erroneous view regarding the law of Pennsylvania. The Court of Appeals laid bare that error, and, in compelling obedience to its correction, exhausted the only power which Congress gave it. At this point the Commission was again charged with the duty of judging the application in the light of "public convenience, interest, or necessity." [309 U.S. at p. 145, 60 S.Ct. at page 442, 84 L.Ed. 656].

In the Heitmeyer case, the Commission had denied the application of Heitmeyer for a construction permit for a broadcast station upon the sole ground that Heitmeyer lacked financial qualifications. Upon an appeal this court, upon the ground that the criterion applied by the Commission for determination of financial qualifications was arbitrary, and upon the further ground that the Commission's findings of fact were insufficient, reversed the Commission's decision and remanded the case for further proceedings in conformity with the court's opinion. Heitmeyer v. Federal Communications Commission, 68 App.D.C. 180, 95 F.2d 91 (1937). Heitmeyer then filed a petition with the Commission asking that it make a final decision upon the record "as it now stands." The Commission denied that petition and ordered that the record be reopened for a consolidated hearing with two subsequently filed rival applications. Heitmeyer then obtained from this court a writ of mandamus directing the Commission to restrict consideration of his application to the record originally before it. No. 3102 Original, May 24, 1939. The Supreme Court reversed the action of this court in issuing the writ. The Court said:

. . . But the Commission's duty was to apply the statutory standard in deciding which of the applicants was to receive a permit after it fell into legal error as well as before. If, in the Commission's judgment, new evidence was necessary to discharge its duty, the fact of a previously erroneous denial should not, according to the principles enunciated in the *Pottsville* case . . . bar it from access to the necessary evidence for correct judgment. [309 U.S. at p. 148, 60 S.Ct. at page 444, 84 L.Ed. 664.]

The *ratio decidendi* of the Pottsville and Heitmeyer decisions in the Supreme Court is that the Commission, the body charged by Congress with the duty of applying the statutory criterion of public convenience, interest or necessity, is so charged at all times, including the time of further proceedings after remand by a court. Within this reasoning and since the Commission in the exercise of its duty has concluded that the original record does not contain sufficient information for a proper determination of the issues before it, the Commission in the instant case is warranted in reopening the proceeding for the taking of additional evidence. The court's remand must, in view of the reasoning of the Supreme Court, be read in the light of the Commission's duty to award applications for construction permits in satisfaction of public convenience, interest or necessity at the time of the award.

On May 24, 1950, the Commission released an order permitting the Allentown Broadcasting Corporation to amend its application for a construction permit. As a part of its argument that the Commission should be forbidden to hold the further hearing ordered by it the Easton Publishing Company asserts that the amendment so permitted creates an essentially new application, and the Company contends that for the Commission to consider such an application would be in violation of its Rule 1.387(b) (3) providing, for the purpose of comparative hearings, a twenty-day cut-off time for new applications.[3] The Easton Publishing Company further asserts that the changes in its corporate structure and in that of the Allentown Broadcasting Corporation have already been approved by the Commission, and the Company contends that reconsideration by the Commission of these changes would be improper. Assuming *arguendo* the correctness of the assertions, the contentions that the further hearing ordered by the Commission would in the respects mentioned be erroneously conducted have no validity as against the *power* of the Commission to hold the further hearing upon the issues above specified. Moreover the court cannot in this proceeding pass upon the question whether or not it would be error, in view of the cut-off rule, for the Commission to consider the amended application of the Allentown Broadcasting Corporation, or whether or not it would be error for the Commission to reconsider the changes in corporate structure asserted already to have received its approval. For the court to pass upon such questions in this proceeding would be for it to substitute a writ of mandamus and prohibition for an appeal from a denial of an application for a construction permit in which appeal disregard of the cut-off rule and reconsideration of the approved changes in corporate structure might be assigned as error. The United States Courts of Appeals issue writs of mandamus and prohibition in aid of their appellate jurisdiction, 28 U.S.C.A. § 1651(a), but not in substitution for appeals, Ex parte Fahey, Federal Home Loan Bank Commissioner, et al., 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947), McMurtrey v. Clark, 81 U.S.App.D.C. 294, 157 F.2d 703 (1946).

The petitions for writs of mandamus and prohibition are denied.

---

3. Rule 1.387 (b) (3) provides: " . . . Any person filing an application that is mutually exclusive with another application or applications already designated for hearing will be consolidated for hearing with such other application or applications only if the application in question is filed at least 20 days before the date on which the hearing on the prior application or applications is scheduled. . . . If the application is filed after the 20-day period, it will be dismissed without prejudice and will be eligible for refiling only after a decision is rendered by the Commission with respect to the application or applications designated for hearing or such applications are withdrawn or dismissed."