Notice: This opinion is subject to formal revision before publication in the
Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the
Clerk of any formal errors in order that corrections may be made before the
bound volumes go to press.

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 12, 2005        Decided October 14, 2005

No. 04-5276

PALISADES GENERAL HOSPITAL INC.,
APPELLANT

v.

MICHAEL O. LEAVITT, SECRETARY OF HEALTH
AND HUMAN SERVICES,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 99cv01230)

———

*Robert L. Roth* argued the cause for appellant.  With him on
the briefs were *Clifton S. Elgarten* and *Fredrick R. Keith.*

*Paul E. Soeffing*, Attorney, U.S. Department of Health &
Human Services, argued the cause for appellee.  With him on the
brief were *Peter D. Keisler*, Assistant Attorney General, U.S.
Department of Justice, *Kenneth L. Wainstein*, U.S. Attorney,

*Anthony J. Steinmeyer*, Attorney, *Alex M. Azar, II*, General Counsel, U.S. Department of Health & Human Services, and *Robert P. Jaye*, Acting Associate General Counsel.

Before: GINSBURG, *Chief Judge*, and SENTELLE and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Palisades General Hospital appeals the partial denial of summary judgment on its claim for make-whole relief under the Medicare program. Because the Secretary of the Department of Health and Human Services failed to make timely requested corrections to wage data submitted by the hospital, it received a substantially lower level of reimbursement and sought to obtain the balance. The hospital contends that the district court, having found that the Secretary acted arbitrarily and capriciously in denying the wage data corrections, erred in failing to exercise its equitable powers to award Palisades an adjusted reimbursement reflecting reclassification of the hospital to the New York City Metropolitan Statistical Area. Because the hospital's contention misconceives the jurisdiction of the district court in reviewing the Secretary's decision and is, in effect, an attempt to circumvent the statutory bar on judicial review of the Secretary's reclassification decisions, we affirm.

## I.
### A.

The Medicare program was created to pay for certain specified, or "covered," medical services provided to eligible elderly and disabled persons. *See* Title XVIII of the Social Security Act, Pub. L. 89-97, 79 Stat. 291 (1965), as amended, 42 U.S.C. § 1395 *et seq*. (hereafter, "Act" or "Medicare statute"). Health care providers are reimbursed for a portion of the costs that they incur in treating Medicare beneficiaries under an

extremely "complex statutory and regulatory regime." *Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 404 (1993). Under the Prospective Payment System ("PPS"), hospitals are paid predetermined, fixed amounts for the Medicare-covered services they provide. *See* 42 U.S.C. § 1395ww(d). The calculation of PPS payment rates is described in *Methodist Hospital of Sacramento v. Shalala*, 38 F.3d 1225, 1227-28 (D.C. Cir. 1994). Suffice it to say, PPS payment rates are directly correlated with the so-called "wage index." 42 U.S.C. § 1395ww(d)(2)(H), (3)(E). The wage index allows the Secretary to adjust for regional variations in wage costs by taking into account how the average hospital wage in an area compares to the national average hospital wage. 44 Fed. Reg. 11,612, 11,613 (1979); *see also Methodist Hosp.,* 38 F.3d at 1227.

Reimbursement of a service provider's costs is made through a "fiscal intermediary," a private entity that acts as the Secretary's agent. 42 U.S.C. § 1395h(a). At the end of its fiscal year, a hospital submits to its intermediaries a cost report setting forth all costs for which it claims reimbursement. 42 C.F.R. § 405.1801(b)(1). Based on these costs and the hospital's wage index, the fiscal intermediary calculates the amount of reimbursement due to the hospital. A hospital that is dissatisfied with a final determination of the fiscal intermediary or Secretary may appeal it. Upon compliance with the statutorily imposed jurisdictional requirements, a hospital may request a hearing before the Provider Reimbursement Review Board ("PRRB"). 42 U.S.C. § 1395oo(a), (b). The decision of the PRRB is sometimes subject to further review by the Secretary's delegate, the Administrator of the Centers for Medicare & Medicaid Services ("CMS"). *See* 42 C.F.R. § 405.1875. The Medicare statute also authorizes the hospital to request judicial review of the final decision of the PRRB in federal district court within 60 days of receipt of the final decision. 42 U.S.C. § 1395oo(f)(1).

Although wage indices are generally set geographically, Congress determined that this system occasionally produced inequitable results. *See Athens Cmty. Hosp., Inc. v. Shalala*, 21 F.3d 1176, 1177 (D.C. Cir. 1994). It therefore created the Medicare Geographic Classification Review Board ("MGCRB"), which reviews applications from hospitals seeking geographic redesignation to a nearby area in order to use that area's (higher) wage index. 42 U.S.C. § 1395ww(d)(10); 42 C.F.R. § 412.230-412.235; *Athens*, 21 F.3d at 1177. A hospital requesting reclassification for the purpose of using another area's wage index must submit data regarding its average hourly wage that are drawn from the "hospital wage survey used to construct the wage index in effect for [PPS] payment purposes during the fiscal year prior to the fiscal year for which the hospital requests reclassification." 42 C.F.R. § 412.230(d)(2)(i)(A). For example, reclassification decisions for FY 2000 were based on the wage data used to construct the FY 1999 PPS payment rates. 63 Fed. Reg. 25,576, 25,585 (May 8, 1998); *id.* at 25,589. Under the Act, decisions on applications for geographic reclassification must be issued under strict time frames. 42 U.S.C. § 1395ww(d)(10)(C)(ii)-(iii). Congress provided that decisions of the MGCRB may be appealed to the Secretary, but that the Secretary's decision regarding appeals from the MGCRB "shall be final and shall not be subject to judicial review." 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II).

## B.

Palisades Hospital, located in North Bergen, New Jersey, is a provider of services under the Medicare program. As of 1998, the hospital was a part of the geographic region known as the Jersey City, New Jersey Metropolitan Statistical Area ("MSA"). On September 1, 1998, the hospital applied for geographical reclassification to the New York City MSA for FY 2000. It also participated in a group application submitted jointly by all of the hospitals located in the Jersey City MSA seeking redesignation

to the Bergen-Passaic, New Jersey MSA for FY 2000.

In order to qualify for reclassification to the New York City MSA for FY 2000, the hospital had to submit wage data to the MGCRB by September 1, 1998. The hospital therefore needed to ensure that its wage data were accurate. After February 2, 1998, the start of the wage data correction process, the hospital filed timely requests for revisions to its wage data, some of which were denied by its fiscal intermediary. The hospital unsuccessfully pursued various administrative and judicial remedies in an effort to obtain all of its desired revisions. In a letter dated June 10, 1998, the fiscal intermediary informed the hospital that it would make no further corrections. On February 24, 1999, using the hospital's unrevised data, the MGCRB granted the group application for geographic reclassification to the Bergen-Passaic MSA and dismissed the hospital's separate application for reclassification to the New York City MSA.

The hospital sued the Secretary and the MGCRB, challenging the partial denial of its requests for corrections to the wage data that were used in the fiscal year 1999 wage index. The district court found that the hospital had failed to comply with deadlines set by the Secretary, and the hospital appealed. Following a remand for consideration of the merits, *see Palisades Gen. Hosp., Inc. v. Thompson*, No. 03-5139, 2004 U.S. App. LEXIS 5 (D.C. Cir. Jan. 2, 2004), the district court partially granted and partially denied the parties' cross-motions for summary judgment. The district court found that the Secretary acted arbitrarily and capriciously in denying the hospital's disputed wage data correction requests, and that its wage data index should be revised and its Medicare reimbursement recalculated in light of the change. The district court also determined that its decision did not entitle the Hospital to have its individual geographic reclassification application reconsidered, regarding review as precluded by the Secretary's

"no adjustment" policy, under which the Secretary will not consider revised wage data for purposes of revisiting past adjudications of requests for geographic reclassification. *See* 60 Fed. Reg. 45,778, 45,795-96 (Sept. 1, 1995).

The hospital again appeals. Our review of the district court's denial of summary judgment is *de novo, Transitional Hosps. Corp. of La. v. Shalala*, 222 F.3d 1019, 1023 (D.C. Cir. 2000), while our review under 42 U.S.C. § 1395oo(f)(l) of the Secretary's decision denying relief based on corrected wage data is limited to determining whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *See Methodist Hosp.*, 38 F.3d at 1229; *see also Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

## II.

The hospital contends that the district court erred by declining to grant it full relief by restoring it to the position it would have occupied had the Secretary corrected its wage data before the MGCRB issued its reclassification decisions. The hospital maintains that the scope of relief is a judicial determination and that "the natural and ordinary relief" to be ordered in setting aside an agency action is to direct the agency to ensure that the claimant is afforded the same outcome that would have followed if the agency had acted correctly. Specifically, the hospital contends it is entitled to make-whole relief including an adjusted reimbursement reflecting the sum it would have received had it been reclassified to the New York City MSA.

At the outset, the hospital's contention is based on a flawed premise. The district court had no jurisdiction to order specific relief. Unlike a district court managing a "garden variety civil suit," a district court reviewing a final agency action "'does not

perform its normal role' but instead 'sits as an appellate tribunal.'" *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999) (quoting *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995)). Thus, "'under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards.'" *Id*. Accordingly, the district court had jurisdiction only to vacate the Secretary's decision rejecting the hospital's revised wage data and to remand for further action consistent with its opinion. It did not, as the hospital contends, have jurisdiction to order either reclassification based upon those adjusted wage data or an adjusted reimbursement payment that would reflect such a reclassification. *See id.*

Furthermore, the Medicare statute bars the specific relief requested. The Act provides that the decision of the Secretary on reclassification decisions "shall be final," and "shall not be subject to review." 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II). The plain text of the Act alone is enough to affirm the district court's decision because a hospital is not entitled to seek review to overturn a reclassification decision of the Secretary once that decision becomes final. *Robert Wood Johnson Univ. Hosp. v. Thompson,* 297 F.3d 273, 286 n.6 (3d Cir. 2002); *Jordan Hosp., Inc. v. Shalala,* 276 F.3d 72, 77 (1st Cir. 2002); *ParkView Med. Assocs. v. Shalala,* 158 F.3d 146, 148 (D.C. Cir. 1998); *Skagit County Pub. Hosp. Dist. No. 2 v. Shalala,* 80 F.3d 379, 385 (9th Cir. 1996). The hospital has not pointed to anything in the statute or legislative history to demonstrate otherwise. There is no jurisdiction, therefore, either to order the Secretary to reconsider his reclassification decision or to direct a reimbursement payment that would reflect such a reclassification.

As the hospital would have it, its appeal involves review of a wage data correction request rather than a geographic reclassification decision. Pointing to 42 C.F.R. §§ 412.266 & 412.274, the hospital maintains that the MGCRB does not have authority to recalculate the wage index but must accept the wage index determinations provided to it, and concludes that therefore court-ordered corrections to the wage index logically should result in corrections to the reclassification decision. Its contention that Congress's provision for judicial review of wage data indicates that Congress could not have intended to prevent courts from correcting injustices arising from the use of incorrect wage data neglects to consider the rationale for finality noted by the court in *Methodist Hospital,* 38 F.3d at 1233. There the court concluded that "it was not arbitrary and capricious of the Secretary to decide that the administrative burden of recalculating the reimbursement rate for every hospital in a metropolitan area every time any hospital in that area makes an error in reporting wage data outweighs the increase in accuracy that would result." *Id.* (quotations omitted).

The court observed that because, under the PPS payment system, "each wage index is used to develop the base national rate as well as to adjust that rate by region, a change in any single wage index can affect the reimbursement rate of each hospital in the country." *Id*. at 1228. So too here, the Secretary has weighed competing interests in finality and accuracy and has arrived at a policy that is substantially buttressed by Congress's decision to mandate the finality of reclassification decisions. The Ninth Circuit held in a similar case that "although [the hospital] focuses on an intermediate process [the wage correction process] and the fringe benefit determinations, what [the hospital] really wants is for the court to overturn the final reclassification decision. Such judicial action is not permissible under the Medicare statutory scheme." *Skagit County Pub. Hosp.,* 80 F.3d at 386.

Furthermore, the hospital's view of legislative intent is inconsistent with the statutory structure. The hospital views it as impossible that Congress would render a reclassification decision non-reviewable when it is made on the basis of erroneous wage data, especially when the blame for the errors lies at the Secretary's doorstep. Again, that determinations related to wage index are subject to judicial review pursuant to 42 U.S.C. § 1395oo(f)(1) does not mean that Congress intended for geographic reclassification also to be judicially reviewable on the basis of court-corrected data. This distinction between "ordinary" reimbursement and reclassification is supported by the fact that Congress provided separately for applications seeking geographic reclassification through the MGCRB, 42 U.S.C. § 1395ww(d)(10)(C)(ii), (D)(i). As the Secretary explains, before Congress's creation of the MGCRB, the hospital wage data were important only for purposes of figuring the area wage indices used in calculating the amount of a hospital's per-discharge reimbursement. After the creation of the MGCRB, however, the data used to construct the wage index also became important for purposes of determining whether a hospital could obtain geographic reclassification for wage index purposes. The fact that two different determinations share a common input - the wage data - does not imply that the judicial review and remedial authority available for one determination must carry over to the other.

The hospital's reliance on *ParkView,* 158 F.3d 146, is misplaced. The court stated in that case that "[j]udicial review of the denial [of a reclassification decision] itself is barred... [b]ut this bar leaves hospitals free to challenge the *general rules* leading to denial." 158 F.3d at 148 (emphasis added). As the Ninth Circuit has recognized, however, when a procedure is challenged solely in order to reverse an individual reclassification decision, judicial review is not permitted. *Skagit*, 80 F.3d at 386. The proposition that hospitals may challenge the

*general rules* leading to denial is therefore inapplicable here, where the hospital's challenge is no more than an attempt to undo an individual denial of reclassification.

Accordingly, we affirm the order denying in part the hospital's motion for summary judgment. We therefore need not and do not reach the hospital's contention that the district court erred in its alternative ruling that the Secretary properly could decline make-whole relief relying on its unpublished practice to act on group applications for reclassification prior to individual applications.